**SO ORDERED.**

**SIGNED this 13 day of May, 2019.**

*Stephani W. Humrickhouse*

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                      CHAPTER 11

**SEARS FARM, LLC**                          **CASE NO. 18-00986-5-SWH**

     Debtor.

### ORDER CONFIRMING FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

The First Amended Chapter 11 Plan and Disclosure Statement filed by the Debtor on November 27, 2018, having been transmitted to creditors and security holders of the above referenced Debtor; and

The Plan having been amended at hearing to conform to previous orders of this court, and a copy of the Plan as confirmed being attached hereto as Exhibit "A;" and

It having been determined after hearing on notice that the requirements for confirmation set forth in 11 U.S.C. 1129(a) have been satisfied except as to Class 5, and as to Class 5 the requirements of 11 U.S.C. 1129(b) have been satisfied;

IT IS ORDERED THAT:

1.  The Disclosure Statement relating to the Plan filed by the Debtor on November 27, 2018, contains adequate information about the Plan within the purview of 11 U.S.C. § 1125, and is APPROVED.

2.  The Plan as amended and attached hereto as Exhibit "A" is CONFIRMED.

3.  Except as provided in the Plan, the Debtor is hereby released from all Dischargeable debts.

4.  The Debtor shall file post-confirmation reports with the Clerk of the Bankruptcy Court pursuant to 11 U.S.C. § 1106(a)(7) with a copy served on the Bankruptcy Administrator. The first Post-Confirmation Report shall be due for the period ending June 30, 2019. The Debtor shall file subsequent reports at the end of every succeeding quarter until the Plan is substantially consummated. Quarterly Reports shall reflect any progress made in consummating the Plan during the period covered by the report. Post-Confirmation Reports shall be filed in the format prescribed by the Bankruptcy Administrator.

5.  Within thirty (30) days of substantial consummation of the Plan as defined by 11 U.S.C. §1101(2), the Debtor shall file a final report, in a format prescribed by the Bankruptcy Administrator, reflecting the payments made for all costs of administration and each class of creditor, and a motion for the entry of a Final Decree pursuant to Rule 3022 of the Federal Rules of Bankruptcy Procedure. If there are any adversary proceedings pending at the time the motion for a final decree is filed, a final decree can be entered, but closing of the bankruptcy case will be deferred until the adversary proceedings are resolved.

6.  The Debtor shall pay to the Clerk, United States Bankruptcy Court the sum of $0.00 for court costs. The Debtor shall continue to pay quarterly fees until it applies for its Final Decree.

7.      The Debtor shall serve a copy of this Order on all creditors within five (5) days of the entry of this Order and promptly file a Certificate of Service with the Clerk.

8.      To the extent consistent with the terms of 28 U.S.C. § 1334, this Court retains jurisdiction over this case with respect to the interpretation and implementation of the terms and conditions of this Order and the Plan.

**END OF DOCUMENT**

EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **SEARS FARM, LLC** | **CASE NO. 18-00986-5-SWH** |
| Debtor. | |

CHAPTER 11 PLAN AS CONFIRMED

NOW COMES Sears Farm, LLC ("Debtor"), debtor-in-possession in this Chapter 11 case and files the following First Amended Chapter 11 Plan pursuant to § 1121(a) of the Bankruptcy Code.

ARTICLE 1
DEFINITIONS

The following terms used in this Chapter 11 Plan shall, unless the context otherwise requires, have the meanings specified below:

1.1     Administrative Expense Claim:  a cost or expense of administration in the case allowable under § 503(b) of the Bankruptcy Code, including but not limited to any actual, necessary expense of preserving or liquidating the estate, any actual, necessary expense of operating the business of the Debtor, any actual, necessary expense of consummating the Plan and all allowances, costs and fees approved by the Bankruptcy Court in accordance with § 330 of the Bankruptcy Code.

1.2     Allowed Administrative Expense Claim:  any existing or future Administrative Expense Claim either (i) for which a fee application has been filed and which has been allowed by a Final Order, or (ii) as to any other Administrative Expense Claim, an application was filed; and (a) no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, or (b) any timely objection thereto has been determined and all or some portion of the claim has been allowed by a Final Order. Any post-confirmation costs and expenses reasonably necessary to consummate the Plan shall also be included and paid as an Allowed Administrative Expense Claim.

1.3     Allowed Claim:  any claim (a) which shall have been listed by the Debtor in a known amount as undisputed, non-contingent, and liquidated on the Schedules filed with the Court

1

and to which Debtor does not file an objection with the United States Bankruptcy Court, or which is ultimately allowed by the Bankruptcy Court over such an objection; (b) which shall have been properly filed as a Proof of Claim with the United States Bankruptcy Court on or prior to June 25, 2018 (or on or prior to August 28, 2018, for governmental claims), and to which Debtor does not file an objection with the United States Bankruptcy Court, or which is ultimately allowed by the Bankruptcy Court over such an objection; or (c) which arose out of the rejection of an executory contract or unexpired lease as provided for by the terms of this Plan, and which shall have been properly filed as a Proof of Claim with the United States Bankruptcy Court on or before the expiration of thirty (30) days after the Effective Date, and to which Debtor does not file an objection or which is ultimately allowed by the Bankruptcy Court over any such objection. Where there is a difference between the amounts scheduled as undisputed by the Debtor in their Schedules and the amount set forth in the Proof of Claim filed by an affected creditor, the amount shown in the Proof of Claim shall govern for purposes of allowance unless objected to by the Debtor, in which case, the Claim shall be the amount allowed by the Bankruptcy Court.  Unless otherwise specified in the Plan, Allowed Claims shall not include interest on the principal amount of the claim from and after the Filing Date.

1.4     Allowed Unsecured Claim:  an Unsecured Claim that is or has become an Allowed Claim.

1.5     Allowed Priority Tax Claim:  a Priority Tax Claim, which is or has become an Allowed Claim.

1.6     Allowed Secured Claim:  a Secured Claim, which is or has become an Allowed Claim.

1.7     Ballot:  the form or forms which will be distributed to Creditors and the holders of Equity Interests together with a disclosure statement pursuant to § 1125 of the Bankruptcy Code in connection with the Debtor's solicitation of acceptance or rejections of this Plan.

1.8     Bankruptcy Code:  the Bankruptcy Reform Act of 1978, as amended, title 11 of the United States Code, in effect on the Filing Date.

1.9     Bankruptcy Court:  the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in this case.

1.10     Bankruptcy Rules:  the Federal Rules of Bankruptcy Procedure, as amended, in effect on the Filing Date.

1.11     Bond Trustee: UMB Bank, N.A. as bond trustee for the Series 2016 Bonds.  Bond Trustee shall also include UMB Bank, N.A., as Master Trustee, when applicable.

1.12    Business Day:  shall mean any day on which banks are open to carry on their ordinary commercial banking business in the State of North Carolina.

1.13    Chapter 11 Case:  the Chapter 11 Case of Sears Farm, LLC case no. 18-00986-5-SWH, commenced under the provisions of Chapter 11 of the Bankruptcy Code on the Filing Date in the Bankruptcy Court.

1.14    Claim:  any right to payment, or any right to an equitable remedy for breach of performance if such breach gives rise to right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.15    Class:  a class of Claims or Equity Interests as indicated in the Plan.

1.16    Confirmation Date:  the date upon which an order confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, entered by the Bankruptcy Court, becomes a Final Order.

1.17    Creditor:  any Entity that is the holder of a Claim against the Debtor that arose on or before the Filing Date or a Claim against the Debtor's estate of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code.

1.18    Debtor:  Sears Farm, LLC, the debtor in the Chapter 11 Case.

1.19    Bond Deed of Trust:  That certain Amended and Restated Deed of Trust, dated as of December 1, 2016, made by the Debtor to Stewart Title Company, as trustee, for the benefit of the Master Trustee, granted to secure the Debtor's obligations under the Guaranty.

1.20    Disclosure Statement: the disclosure statement, as amended and supplemented, and approved by the Bankruptcy Court for use in connection with the solicitation of acceptances of this Plan.

1.21    Disputed Claim: any Claim that is not an Administrative Expense Claim and either (i) is scheduled by a Debtor as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance thereof, in whole or in part, has been or is interposed prior to the final date provided under this Plan for the filing of such objections (or thereafter pursuant to an order of the Bankruptcy Court) and which objection has not been settled or determined by a Final Order.

1.22    Disputed or Unresolved Administrative Expense Claim:  any existing or future Claim that is an Administrative Expense Claim and either : (i) (a) an application for payment was or will be filed on or before the date designated by this Plan, or pursuant to any order of the Bankruptcy Court, as the last date for filing the application for payment; and (b) as to which either

3

(I) an objection to the allowance thereto has been interposed within the applicable period of limitation that has not yet been resolved by a Final Order, or (II) no Final Order has been issued if a Final Order is required by § 330 of the Bankruptcy Code; or (ii) an application for payment was filed after the last date designated for such filing as described above, whether or not an objection to the allowance thereof has been interposed.

1.23    Distributable Property:  the property distributable to Creditors under this Plan, after deduction for any expenses properly chargeable against the Distributable Property in accordance with this Plan.

1.24    Effective Date:  the date occurring fifteen (15) days after the Confirmation Date.

1.25    Entity:  an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, or an incorporated organization.

1.26    Equity Interest:  any equity interest in the Debtor as of the Filing Date.

1.27    Filing Date: March 1, 2018, the date upon which the Debtor filed with the Bankruptcy Court its petition for relief under title 11, commencing the Chapter 11 Case.

1.28    Final Order:  an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which any prescribed time to appeal has expired and no petition for certiorari is pending, or as to which any right to appeal or petition for certiorari has been waived in writing in a manner satisfactory to the Debtor or, if an appeal or certiorari thereof has been sought, the order or judgment of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed, or certiorari has been denied, and the prescribed time to take any further appeal or to seek certiorari or further re-argument or rehearing of any appeal has expired.

1.29    Bond Guaranty: That certain Amended and Restated Guaranty Agreement, dated as of December 1, 2016 given by the Debtor in favor of the Master Trustee, pursuant to which the Debtor has guaranteed the full and prompt payment of the principal, premium (if any), and interest due on the Series 2016 Bonds.

1.30    Net Proceeds:  The gross purchase price for the sale of property net of the following items:

        a) Debtor's share of ad valorem real estate taxes;

        b) Real estate commissions;

        c) Debtor's share of any governmental or owner's association assessments;

        d) Subdivision costs;

        e) Transfer taxes (stamps);

4

f) Recording fees for subdivision plats, restrictive covenants, deeds of release or other instruments that Debtor has the obligation to record;

g) Amounts escrowed per the terms of any purchase and sale agreement;

h) Filed and unfiled Chapter 44 liens not covered by the Plan as necessary for closing;

i) Debtor's closing attorney's fees; and

j) Other costs customarily incurred by a seller in commercial real estate sales in North Carolina.

k) Allowed Secured Claims paid at closing to Classes 5, 6, 7, and 8.

1.31    Plan:  this First Amended Chapter 11 Plan of Reorganization, either in its present form or as it may be altered, amended or modified from time to time.

1.32    Plan Escrow Account:  An escrow account to be established with a third-party escrow agent agreed to between the Debtor and the Bond Trustee, or in the absence of agreement pursuant to a further order of the Bankruptcy Court, to be used consistent with paragraph 3.1 of the Plan.  The Plan Escrow Account shall be subject to a lien and security interest in favor of the creditors in Classes 1 through 12 to secure payments to such classes under this Plan.

1.32A  Special Plan Escrow Account: An escrow account to be established with a third-party escrow agent to be used consistent with paragraph 3.1 of the Plan.  The Plan Escrow Account shall be subject to a lien and security interest in favor of the creditors in Classes 1 through 9, and Classes 11 and 12 to secure payments to such classes under this Plan.

1.33    Priority Tax Claim: any Claim, other than an Administrative Expense claim, which is entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

1.34    Pro Rata: the ratio, as of the date of determination thereof, of the amount of the Allowed Claims held by any Creditor in the indicated Classes to the aggregate to the amount of Allowed Claims in the indicated Classes (including, in each such calculation, the full amount of Disputed Claims in the indicated Classes that have been asserted or are otherwise pending and that have not yet been allowed or otherwise disposed of).

1.35    Secured Claim:  the portion of any Claim against the Debtor determined in accordance with section 506(a) of the Bankruptcy Code, as of the Confirmation Date, secured by a valid, perfected and unavoidable lien.

1.36    Secured Rate:  Simple interest at the rate of 6%, or such interest rate as the Bankruptcy Court finds is necessary for confirmation of this Plan.

1.37    Series 2016 Bonds:  The bonds issued by the Public Finance Authority as Revenue Bonds (SearsStone CCRC Project) Series 2016, pursuant to that certain Indenture of Trust, dated December 1, 2016, between the Authority and the Bond Trustee.

1.38    Unclaimed Property:  any funds which are unclaimed on the 120th day following the date on which such Unclaimed Property was mailed or otherwise sent to the holder of an Allowed Claim or allowed Administrative Expense Claim pursuant to this Plan, and shall include (i) checks (and the funds represented thereby) that have been returned as undeliverable without a proper forwarding address, (ii) funds for checks which have not been presented for payment and paid, and  (iii) checks (and the funds represented thereby) that were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

1.39    Unsecured Claim:  any Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, or an Equity Interest.

1.40    Unsecured Creditor:  any Creditor that holds an Unsecured Claim.

1.41    Unsecured Rate: the Prime Rate on the Effective Date or such rate necessary to confirm the Plan.

1.42    Mediated Settlement Agreement: the Mediated Settlement Agreement among the Debtor, Bill Sears, Samaritan and the Bond Trustee approved by the Bankruptcy Court by Order entered March 27, 2019.

1.43    More Fulsome Settlement Agreement:  the "more fulsome" Settlement Agreement which was anticipated to be entered into among the Debtor, Bill Sears, Samaritan and the Bond Trustee as stated in numbered paragraph 1 Mediated Settlement Agreement.

1.44    Samaritan:  Samaritan Housing Foundation Inc., a Georgia nonprofit corporation that owns and operates the SearStone Retirement Community.

ARTICLE 2
CONSTRUCTION

2.1    Applicability of the Bankruptcy Code and Bankruptcy Rules: Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used herein shall have the meanings ascribed thereto in the Bankruptcy Code and in the Bankruptcy Rules.

ARTICLE 3
MEANS FOR IMPLEMENTING PLAN

3.1    Means for Implementing the Plan.  The Debtor is a North Carolina LLC which owns substantial real estate in Cary, North Carolina with a scheduled value of $11,058,570.  The

6

Debtor intends to make the payments called for under this Plan by collecting a $1,000,000 principal payment on a purchase money note from Samaritan pursuant to the Mediated Settlement Agreement, selling its real property free and clear of liens (except Lot 37, which the Debtor shall convey to Samaritan pursuant to the Mediated Settlement), and collecting accounts receivable and pursuing causes of action subject to the Mediated Settlement Agreement and the More Fulsome Settlement Agreement. The Debtor shall engage in a sale process for the real estate with the following attributes:

- The Debtor shall work cooperatively with the Bond Trustee (except as to Lots 1 and 41) to design and implement a sale process intended to maximize the purchase price received for the real estate.

- The Debtor shall retain one or more professional real estate brokers to market and sell the real estate. Any real estate broker retained by the Debtor shall be subject to the reasonable consent of the Bond Trustee (except as to Lots 1 and 41), or in the absence of agreement, an order of the Bankruptcy Court.

- The Debtor shall retain an appraiser with the MIA designation to conduct a fair market value appraisal of each lot of real estate to be sold by the Debtor. The appraiser retained by the Debtor shall be subject to the reasonable consent of the Bond Trustee (except as to Lots 1 and 41), or in the absence of agreement, an order of the Bankruptcy Court.

- Prior to closing any sale of real estate, the Debtor shall have obtained a current appraisal for the relevant real estate. A current appraisal is one that is completed within 6 months that precedes the date the relevant sale closes (a "Current Appraisal").

- The Debtor shall not sell any real estate for an amount that is less than 95% of its appraised value, based on the Current Appraisal, without the consent of the Bond Trustee (except as to Lots 1 and 41), or in the absence of agreement, an order of the Bankruptcy Court.

Throughout the implementation of the sale process of the real estate, other than Lot 1, on which the Bond Trustee has not asserted a lien under the Bond Deed of Trust, and other than Lot 41, the lien on which the Bond Trustee will release under the Mediated Settlement Agreement, the Debtor shall provide the Bond Trustee with information and updates related to the sale process as reasonably requested by the Bond Trustee. The Debtor also shall provide the Bond Trustee with reasonable access to any broker retained by the Debtor.

The Net Proceeds of real estate sales from Lots 1 and 41 shall be deposited into the Special Plan Escrow Account. Upon the first sale of one of Lots 3, 4, 6 or 13, the Debtor shall pay

7

$500,000 in Net Proceeds from the sale to the Bond trustee in accordance with the terms of the Mediated Settlement Agreement. The Net Proceeds from other real estate sales, funds collected from the Debtor's pre-petition accounts receivable (other than the $1 Million payment provided for in the Mediated Settlement Agreement, which shall be deposited into the Debtors existing DIP account), and funds collected from causes of action shall be deposited into the Plan Escrow Account. The initial $1 Million payment provided for in the Mediated Settlement Agreement, the Special Plan Escrow Account, and the Plan Escrow Account shall be maintained and used as follows:

      a.     The initial $1 Million payment provided for in the Mediated Settlement Agreement, the Special Plan Escrow Account, and the Plan Escrow Account shall be first used to pay Class 1 Claims including expenses reasonably necessary to consummate this Plan. The Debtor may, at any time and at its option, reserve up to $200,000 in the Plan Escrow Account for payment of future anticipated expenses reasonably necessary to consummate this Plan. In addition, the Debtor is authorized to make a one-time withdrawal from the Plan Escrow Account in an amount not to exceed $20,000, which funds the Debtor shall deposit into its current operating account. These funds shall be used to pay normal operating expenses of the Debtor during the execution of this Plan.

      b.     Following payment of Class 1 and the establishment of a reserve amount, funds from the initial $1 Million payment provided for in the Mediated Settlement Agreement, the Special Plan Escrow Account, and the Plan Escrow Account shall be next used to pay obligations created by this Plan to Classes 2, 3, 4, and 5.

      c.     Following payment of Classes 1, 2, 3, 4, and 5, and subject to the establishment of a reserve amount, funds from the initial $1 Million payment provided for in the Mediated Settlement Agreement, the Special Plan Escrow Account, and the Plan Escrow Account shall be next used to pay obligations created by this Plan to Class 6, 7, and 8.

      d.     Following payment of Classes 1, 2, 3, 4, 5, 6, 7, and 8 and subject to the establishment of a reserve amount, funds from the initial $1 Million payment provided for in the Mediated Settlement Agreement, the Special Plan Escrow Account, and the Plan Escrow Account shall be next used to pay obligations created by this Plan to Class 9.

      e.     Following payment of Classes 1, 2, 3, 4, 5, 6, 7, 8, and 9, and subject to the establishment of a reserve amount, funds in the Plan Escrow Account shall be held until the earlier of the following events: 1) Class 10 has been paid in full as described in paragraph 14.2; 2) the Bankruptcy Court enters an order finding that Class 10 is adequately protected (but no such finding may be sought by the Debtor until October 31, 2022); or 3) October 31, 2023. In determining whether Class 10 is adequately protected, the Bankruptcy Court shall take into account the value of all collateral securing class 10 (not just collateral owned by the Debtor).

      f.     Following payment of Classes 1, 2, 3, 4, 5, 6, 7, 8, and 9, and a release of the liens held by Class 10 and subject to the establishment of a reserve amount, funds from the initial $1 Million payment provided for in the Mediated Settlement Agreement, the Special Plan

Escrow Account, and the Plan Escrow Account shall be next used to pay obligations created by this Plan to Class 11.

g.        Following payment of Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, and 11 and a release of the liens held by Class 10 and subject to the establishment of a reserve amount, funds from the initial $1 Million payment provided for in the Mediated Settlement Agreement, the Special Plan Escrow Account, and the Plan Escrow Account shall be next used to pay obligations created by this Plan to Class 12.

h.        Following payment of Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, and 12 and a release of the liens held by Class 10 and subject to the establishment of a reserve amount, funds from the initial $1 Million payment provided for in the Mediated Settlement Agreement, the Special Plan Escrow Account, and the Plan Escrow Account shall be next be distributed to Class 13.

The Debtor hereby grants and pledges to the creditors in Class 1 through Class 12 a continuing first priority lien on and security interest in the accounts receivable, the scheduled causes of action, and the Plan Escrow Account and the funds therein to secure prompt payment of such claims in such Classes under this Plan.  The Debtor shall file a financing statement with the Secretary of State for the State of North Carolina in favor of the creditors in Class 1 through Class 12 and execute and deliver such other documentation necessary or reasonably requested by the Bond Trustee in order to perfect the lien and security interest granted hereby.

The Debtor hereby grants and pledges to the creditors in Class 1 through 9, and Classes 11 and 12 a continuing first priority lien on the Special Plan Escrow Account and the funds therein to secure prompt payment of such claims in such Classes under this Plan.  The Debtor shall file a financing statement with the Secretary of State for the State of North Carolina in favor of such classes.

3.2      Lien Releases. Following confirmation of the Plan, the Debtor shall be authorized (for amounts consistent with the provisions of paragraph 3.1) to sell its real property free and clear of any and all liens and encumbrances, with such liens to attach to the Net Proceeds.  The Debtor shall deposit all Net Proceeds into the Plan Escrow Account (or Special Plan Escrow Account) to be used and distributed as provided for in this Plan. Secured creditors shall be required to sign lien releases to facilitate closing of real estate sales.

Payments of funds to creditors from the Plan Escrow Account and Special Plan Escrow Account shall be free and clear of liens.

3.3      Closing Case.  After substantial consummation of the Debtor's Chapter 11 Plan, the Chapter 11 Case will be closed.

3.4      Interest, Penalties, Fees.  There shall be no pre-payment penalties in the event that the Debtor is able to make Plan payments ahead of any scheduled dates or time frames as set forth

9

in the Plan. Except as expressly stated in the Plan, or as allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorneys' fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

## ARTICLE 4
## CLASSIFICATION OF
## CLAIMS AND EQUITY INTERESTS

4.1    Classification of Claims and Interests.   Claims and Equity Interests shall be classified as follows:

| | |
|---|---|
| Class 1 | Allowed Administrative Expense Claims |
| Class 2 | Allowed Secured Tax Claims |
| Class 3 | Allowed Priority Tax Claims |
| Class 4 | Allowed Priority Claims (non-tax) |
| Class 5 | Allowed Secured Claims of Searstone Village Property Owners Association, Inc |
| Class 6 | Allowed Secured Claims of Pinnacle Bank |
| Class 7 | Allowed Secured Claims of WithersRavenel, Inc |
| Class 8 | Allowed Secured Claims of Omer G. Ferrell & Son Grading Co. |
| Class 9 | Allowed $750,000 Secured Claim of John W. and Maggie B. Sears |
| Class 10 | Allowed Secured Claims of UMB Bank, National Association, as master trustee |
| Class 11 | Allowed General Unsecured Claims |
| Class 12 | Allowed Remaining Claims of John W. and Maggie B. Sears |
| Class 13 | Allowed Equity Interests |

## ARTICLE 5
## PROVISIONS FOR TREATMENT
## OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS
(Class 1 Claims)

5.1    Description of Class.   Class 1 is composed of Allowed Administrative Expense Claims.

5.2    Treatment.    Subject to the terms and conditions of this Article, (i) each Administrative Expense Claim that is an Allowed Administrative Expense Claim on the Effective

10

Date shall be satisfied in full on the Effective Date, or as otherwise may be agreed by the holder of such Allowed Administrative Expense Claim; and Allowed Administrative Expense Claims which arise or become payable after the Effective Date shall be paid when otherwise due.

5.3     Allowance of Claims.  Creditors shall file an application for payment for any Administrative Expense Claim arising prior to the Confirmation Date on or before the Effective Date.  Failure to file a timely application for payment shall bar any person or Entity for asserting such Claim against the Debtor, except any professional rendering services to the Debtor and required to file an application for compensation pursuant to 11 U.S.C. § 328.

5.4     Impairment Status. Class 1 is unimpaired under the Plan.

ARTICLE 6
ALLOWED SECURED TAX CLAIMS
(Class 2 Claims)

6.1     Description of Class. Class 2 Claims are comprised of Allowed Secured Tax Claims.

6.2     Treatment.  Class 2 Claims shall be paid in full with interest at the taxing authority's statutory rate from the Plan Escrow Account as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan. At the latest, Class 2 shall be paid within 18 months of the Effective Date.

6.3     Impairment Status. Class 2 is impaired.

ARTICLE 7
TREATEMENT OF ALLOWED PRIORITY TAX CLAIMS
(Class 3 Claim)

7.1     Description of Class.    Class 3 is comprised of the Allowed Priority Tax Claims.

7.2     Treatment of Claims.  Class 3 Claims shall be paid in full with interest at the taxing authority's statutory rate from the Plan Escrow Account as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan. At the latest, Class 3 shall be paid within 18 months of the Effective Date.

7.3     Impairment Status.  Class 3 is impaired under the Plan.

ARTICLE 8
TREATEMENT OF ALLOWED PRIORITY (NON-TAX) CLAIMS
(Class 4 Claim)

11

8.1    Description of Class.    Class 4 is comprised of the Allowed Priority Claims other than those included in Class 3.

8.2    Treatment of Claims. Class 4 Claims shall be paid in full with interest at the Secured Rate from the Plan Escrow Account as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan. At the latest, Class 4 shall be paid within 18 months of the Effective Date.

8.3    Impairment Status.  Class 4 is impaired under the Plan.

ARTICLE 9
TREATEMENT OF ALLOWED SECURED CLAIMS OF Searstone Village Property Owners
Association, Inc
(Class 5 Claim)

9.1    Description of Class.    Class 5 is comprised of the Allowed Secured Claims of Searstone Village Property Owners Association, Inc.

9.2    Treatment of Claims. Class 5 shall retain all liens. Class 5 shall be paid in full with interest at the Secured Rate upon the sooner of:
        a)  the sale of the collateral securing the Class 5 Claim (in which case each Class 5 Claim shall be paid at closing of the leined lot); or
        b) from the Plan Escrow Account as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan.
    At the latest, Class 5 shall be paid within 18 months of the Effective Date.

9.3    Impairment Status.  Class 5 is impaired under the Plan.

ARTICLE 10
TREATEMENT OF ALLOWED SECURED CLAIM OF Pinnacle Bank.
(Class 6 Claim)

10.1    Description of Class. Class 6 is comprised of the Allowed Secured Claims of Pinnacle Bank.

10.2    Treatment of Claims. Class 6 shall retain all liens. Class 6 shall be paid in full with interest at the non-default contract rate upon the sooner of:
        a)  the sale of the collateral securing the Class 6 Claim (in which case Class 6 shall be paid at closing); or
        b) from the Plan Escrow Account as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan.

At the latest, Class 6 shall be paid within 4 years of the Effective Date.

It is anticipated that, until paid in full, Class 6 shall continue to receive regular payments from third party obligors.  Nothing in this Plan shall alter the rights of Pinnacle Bank as to third party obligors.

10.3    Additional Terms

a) Upon maturity of the loans, if not sooner paid, the Debtor will execute and return to Pinnacle Bank not later than 30 days from the date of any maturity, such loan documents as are necessary to renew the loans; and

b) The loans in Class 6 may include post-petition fees and costs in amounts which may be allowed by order of the Bankruptcy Court pursuant to Bankruptcy Code Section 506(b); and

c) Paragraph 24.10 shall not apply to Class 6; and

d) The Debtor shall keep all ad valorem taxes on the collateral of Class 6 current; and

e) Nothing in the Plan shall prejudice the right of Class 6 to seek relief from stay if any default as to Class 6 occurs; and

f) The provisions of the Plan shall inure to the benefit of Pinnacle Bank, its successors and assigns.

10.4    Impairment Status.  Class 6 is impaired under the Plan.

## ARTICLE 11
## TREATMENT OF ALLOWED SECURED CLAIM OF WithersRavenel, Inc
### (Class 7 Claim)

11.1    Description of Class.  Class 7 is comprised of the Allowed Secured Claims of WithersRavenel, Inc.

11.2    Treatment of Claims.  Class 7 shall retain all liens.  Class 7 shall be paid in full with interest at the Secured Rate upon the sooner of:

a)  the sale of the collateral securing the Class 7 Claim (in which case Class 7 shall be paid at closing).; or

b) from the Plan Escrow Account as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan.

At the latest, Class 7 shall be paid within 4 years of the Effective Date.

11.3    Impairment Status.  Class 7 is impaired under the Plan.

## ARTICLE 12

13

<u>TREATEMENT OF ALLOWED SECURED CLAIM of Omer G. Ferrell & Son Grading Co.</u>
<u>(Class 8 Claim)</u>

12.1    Description of Class.  Class 8 is comprised of the Allowed Secured Claim of Omer G. Ferrell & Son Grading Co.

12.2    Treatment of Claims. Class 8 shall retain all liens. Class 8 shall be paid in full with interest at the Secured Rate upon the sooner of:
            a)  the sale of the collateral securing the Class 8 Claim (in which case Class 8 shall be paid at closing).; or
            b) from the Plan Escrow Account as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan.

At the latest, Class 8 shall be paid within 4 years of the Effective Date.

12.3    Impairment Status.  Class 8 is impaired under the Plan.

ARTICLE 13
<u>TREATEMENT OF ALLOWED SECURED CLAIM OF $750,000 Secured Claim of John W.</u>
<u>and Maggie B. Sears</u>
<u>(Class 9 Claim)</u>

13.1    Description of Class.  Class 9 is comprised of a $750,000 Secured Claim of John W. and Maggie B. Sears.  The remaining claims of John W. and Maggie B. Sears shall be included in Class 12.

13.2    Treatment of Claims. The lien of Class 9 shall be retained until such time as Class 9 is paid. Class 9 shall be paid in full with interest at the Secured Rate from the Plan Escrow Account as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan.

13.3    Impairment Status.  Class 9 is impaired under the Plan.

ARTICLE 14
<u>TREATEMENT OF ALLOWED SECURED CLAIM OF UMB Bank, National Association, as</u>
<u>master trustee</u>
<u>(Class 10 Claim)</u>

14.1    Description of Class.  Class 10 is comprised of the Allowed Secured Claims of UMB Bank, National Association, the Bond Trustee. This debt is owed by Samaritan, but has been guaranteed by the Debtor and is secured by certain of the Debtor's real property.  The Claim in Class 10 may include fees and expenses in amounts which may be allowed by order of the

Bankruptcy Court pursuant to Bankruptcy Code Section 506(b) payable to the Bond Trustee under the Guaranty.

14.2    Treatment of Claims. Class 10 shall retain all liens, other than liens on Lot 41. The Class 10 debt is owed by Samaritan Housing Foundation, Inc.  Upon the first sale of one of Lots 3, 4, 6 or 13, the Debtor shall pay $500,000 to the Bond trustee, which shall be credited to the Debtor's outstanding obligations under the Bond Guaranty.  It is anticipated that Class 10 shall be paid in full in the ordinary course of events by Samaritan. In the event that Class 10 is not paid by Samaritan, then, upon entry of orders by the Bankruptcy Court for three consecutive years finding that Class 10 is not adequately protected, Class 10 shall be paid such amount from the Escrow Account as is needed to make them adequately protected as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan. In determining whether Class 10 is adequately protected, the Bankruptcy Court shall take into account the value of all collateral securing class 10 (not just collateral owned by the Debtor). If not sooner released, Class 10's lien on the Escrow Account shall be deemed to be released on October 31, 2023.  If not sooner released, Class 10 shall release all liens on the Debtor's property under the Bond Deed of Trust on October 31, 2023, unless none of Lots 3, 4, 6 or 13 have been sold by that date, in which case the Bond Deed of Trust shall remain in effect to secure the $500,000 obligation until the first sale of one of Lots 3, 4, 6 or 13 or the Debtor pays $500,000 to the Bond Trustee from its other available funds.

14.3    Impairment Status.  Class 10 is impaired under the Plan.

## ARTICLE 15
## TREATEMENT OF ALLOWED UNSECURED CLAIMS
### (Class 11 Claim)

15.1    Description of Class.  Class 11 is comprised of the Allowed Claims not treated elsewhere in the Plan.  Pursuant to the Mediated Settlement Agreement, Samaritan is withdrawing its proof of claim.

15.2    Treatment of Claims.  Class 11 shall be paid in full with interest at the Unsecured Rate from the Plan Escrow Account as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan.

15.3    Impairment Status.  Class 11 is impaired under the Plan.

## ARTICLE 16
## TREATEMENT OF ALLOWED REMAINING CLAIMS OF John W. and Maggie B Sears
### (Class 12 Claim)

16.1    Description of Class. Class 12 is comprised of Allowed Remaining Claims of John W. and Maggie B. Sears.

15

16.2    Treatment of Claims. Class 12 shall be paid in full with interest at the Unsecured Rate from the Plan Escrow Account as soon as such funds are available pursuant to the provisions of Paragraph 3.1 of this Plan.

16.3    Impairment Status. Class 12 is impaired under the Plan.


ARTICLE 17
TREATMENT OF EQUITY INTERESTS
(Class 13 Claims)

17.1    Description of Class. Equity holders shall retain their Equity Interests.


ARTICLE 18
PROVISION FOR TREATMENT OF ALLOWED CLAIMS UNDER
UNEXPIRED LEASES AND EXECUTORY CONTRACTS

18.1    Unexpired Leases and Executory Contracts. The confirmation of the Plan shall act as an acceptance of all leases and executory contracts (as modified in the Mediated Settlement Agreement and as may be modified in the More Fulsome Agreement) listed in the Debtor's Schedule G (as may be amended prior to the hearing on confirmation of the Plan), other than those rejected prior to confirmation of the Plan. All parties shall have thirty (30) days from the Effective Date to file proof of claims for rejection damages. Cure payments will be made on the Effective Date.


ARTICLE 19
CAUSES OF ACTION

19.1    Except as expressly provided otherwise in this Plan, the Debtor preserves and intends to pursue causes of action arising under §§ 544, 545, 547, 548, 549, 550, or 553(b) of the Bankruptcy Code, or under any similar provisions of applicable state law to recover any preferences or fraudulent conveyances from any person. Funds recovered as a result of such actions shall be applied first in reimbursement of attorney's fees and other costs of such actions, and then the remainder shall be the property of the Debtor.  Except as provided in the Mediated Settlement Agreement and the More Fulsome Settlement Agreement, the Debtor specifically retains all claims against Samaritan.


ARTICLE 20
CONFIRMATION AS WAIVER AND RELEASE

16

20.1    Waiver against and Release of Debtor. Except as provided in the Mediated Settlement Agreement and the More Fulsome Settlement Agreement, Confirmation shall constitute waiver and release of the right to pursue litigation and causes of action against the Debtor, which release is supported by the requirements of this Plan and covenants contained herein.

20.2    Injunction.  Except as provided in the Mediated Settlement Agreement and the More Fulsome Settlement Agreement, as of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims that the Debtor may have against any party in interest.  This injunction shall not affect any creditor's ability to enforce rights against non-Debtors and non-Debtor property.

20.3    Exculpation.  None of the Debtor, the Bond Trustee, or the current and former officers, directors, members, managers, employees, attorneys and advisors, each in their respective capacities as such, of each of the foregoing shall have or incur any liability to any entity for any act or omission in connection with or arising out of the negotiation of this plan, the good faith solicitation of the plan in accordance with section 1125(e) of the Bankruptcy Code, the pursuit of confirmation of this Plan, or the pursuit of approval of the Disclosure Statement. (excluding causes of action based on fraud, gross negligence, reckless, willful, or wanton misconduct).

ARTICLE 21
POST-CONFIRMATION OPERATIONS

21.1    Post-Confirmation Operations. The Debtor shall be managed and operated in accordance with the terms of this Plan, the organizational documents, and North Carolina law.

21.2    Management of the Debtor.  Management of the Debtor shall be vested as provided in the organizational documents. The members and managers in place at the time of Plan confirmation in this case shall remain in place.  The Debtor shall administer the terms of the confirmed Plan in all respects.

17

21.3    Professional Compensation. Professional fees and expenses will be paid on the Effective Date or as soon thereafter as they are approved by the Bankruptcy Court. Fees and expenses occurring following confirmation will be paid without prior Bankruptcy Court approval.

## ARTICLE 22
## EXECUTION OF THE PLAN

22.1    Payments.  The Debtor will make payments of the Allowed Claims as provided in this Plan.

22.2    Events of Default. The occurrence of any of the following shall constitute an Event of Default of this Plan.

(i)    Failure to make payment as such payment comes due under the Plan.

22.3    Remedies Upon Default. Upon the occurrence of any Event of Default which not excused, postponed, modified, or waived, and after giving notice to the Debtor and an opportunity to cure within 15 days, the Debtor, in consultation with the Bankruptcy Administrator, shall select a Liquidating Agent.  The Liquidating Agent shall be vested with all powers necessary and appropriate to liquidate property of the Debtor and to pay Allowed Claims as set forth in Paragraph 3.1. The Liquidating Agent shall only liquidate property as needed to pay claims as the come due under the Plan (by way of example, the Liquidating Agent shall not liquidate assets to pay Class 8 until 4 years from the Effective Date).

22.4    Revesting of Property of the Debtor. All of the assets of the Debtor will be retained by the Debtor and on the Effective Date, the Debtor will hold all right, title and interest of the property of the Debtor.  The revested assets shall remain subject to the Bond Deed of Trust and the lien created in favor of creditors under Article 3.1 of this Plan.  The property encumbered by the Bond Deed of Trust and the lien in favor of creditors shall be sold free and clear of such encumbrances and liens pursuant to the terms of this Plan.

22.5    Unclaimed Property.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.  If a distribution check is not negotiated by the creditor within 90 days of the date of the check, or the distribution check is not deliverable to the creditor by way of First Class U.S. Mail, addressed to the address listed in the Creditor's Proof of Claim or on the Petition, the Debtor will be entitled to void said check and retain said funds to be used in the Debtor's discretion.  Any Creditor whose funds are once not negotiated or are returned as described above shall not be part of any subsequent distribution.

18

ARTICLE 23
MODIFICATION OF THE PLAN

23.1    Modification Prior to the Confirmation.  Modification of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that such Plan, as modified, meets the requirements of §§1122 and 1123 of the Code, and that the Debtor has complied with §1125 of the Code.

23.2    Modification After Confirmation. This Plan may be modified at any time after the Confirmation Date and before its substantial consummation, provided that such Plan, as modified, meets the requirements of §§1122 and 1123 of the Code, and that the Court, after notice and a hearing confirms such Plan as modified.

23.3    Deemed Acceptance or Rejection of Modification.  A holder of a claim or interest that has accepted or rejected the Plan, as the case may be, is deemed to have accepted the Plan as modified unless such holder files a notice to the contrary within the time period for such notice affixed by the Court.

23.4    Defects or Omissions.   After confirmation, the proponents of the Plan may, with approval of the Court, remedy any defect or omission or reconcile any inconsistencies in the Plan, Disclosure Statement or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan, Disclosure Statement, or Confirmation Order, so long as the such remedy does not materially or adversely affect the interests of creditors and other parties in interest.

ARTICLE 24
OTHER PROVISIONS

24.1    Extension of Payment Dates.  If any payment under the Plan falls due on a Saturday, Sunday, or other day which is not a Business Day, then such due date shall be extended to the next following Business Day.

24.2    Notices.   Any notice to the Debtor under any obligations created or governed by this Plan must be in writing and sent by registered or certified mail, postage pre-paid, and addressed as follows (and to such other address as the Debtor may notify the creditor in writing):

Sears Farm, LLC
1142 Executive Circle, Suite D
Cary, NC 27511

19

With Copies to:

      William P. Janvier, Esq.
      Janvier Law Firm, PLLC
      311 E. Edenton St.
      Raleigh, NC 27601

Notices must also be e-mailed to bill@janvierlaw.com.

24.3    Reduction of Notice Periods. The notice period applicable to service of any notices on the creditors otherwise applicable, pursuant to the provisions of the Code or this Plan, including any notice of hearing on application or allowance of compensation of professional persons pursuant to Section 330 of the Code, is reduced to a fifteen (15) day period, inclusive of the three days for mailing pursuant to Rule 9006(f) of the Bankruptcy Rules with the exception of any applicable notice period relating to modification of the Plan prior to or after confirmation pursuant to Sections 1122 and 1123 of the Code. If no objections are filed in writing with the Court within said fifteen (15) day notice period, any said motion may be allowed by the Court without the necessity of further notice or hearing.

24.4    Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax. All sale transactions consummated by the Debtor and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including, without limitation, the sale by the Debtor of owned property pursuant to section 363(b) of the Bankruptcy Code and the assumption, assignment and sale by the Debtor of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, will be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, will not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. In addition, each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of this Plan.

24.5    Procedure for Payment of Professional Fees and Expense Reimbursement.
Current counsel for the Debtor and Reorganized Debtor, and the current Court approved accountants for the Debtor and Reorganized Debtor shall not be subject to the fee application process for services rendered post-confirmation in furtherance or implementation of the confirmed Plan.

24.6     No Representations or Warranties Concerning Tax Attributes/Consequences. Neither Debtor nor the Reorganized Debtor make any representations or warranties to any creditor of the Debtor concerning the tax consequence of confirmation of this Plan of Reorganization, the effect of this Chapter 11 case, or as to the status of tax attributes of the Debtor or Reorganized Debtor.

24.7     Members and Managers of Reorganized Debtor. On the Effective Date, existing Members and Managers shall succeed as officers and directors of the Reorganized Debtor.

24.8     Transfer of Claims. Claims may be transferred and will be honored only in accordance with Bankruptcy Rule 3001.

24.9     Sale Free and Clear of Liens.  Any real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations, with any such liens to attach to the Net Proceeds of such sale.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, the Debtor may ask the Court to enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests, with any such liens to attach to the Net Proceeds of such sale.  All real or personal property sold by the Debtor may be sold pursuant to the free and clear order to be entered.  No further motions related to the sales of property shall be required; provided however, the Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.  The Bond Deed of Trust and the lien in favor of creditors created under Article 3.1 of this Plan shall remain in place and effective until the respective closings of the sales of such property, at which point, such sales shall be free and clear of the liens as contemplated under this Article 24.9 and Article 3.2 of this Plan, with such liens attaching the Net Proceeds of the sales.

24.10     Claims Paid by Third Parties.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

24.11     Incorporation of Mediated Settlement Agreement and More Fulsome Settlement Agreement.  The terms of the Mediated Settlement Agreement and the More Fulsome Settlement Agreement are hereby fully incorporated into this Plan.

## ARTICLE 25
## RETENTION OF JURISDICTION

25.1    The Bankruptcy Court shall, after Confirmation, retain jurisdiction of this case to enforce the Mediated Settlement Agreement, resolve any disputes regarding the terms of the More Fulsome Settlement Agreement and enforce the terms thereof, hear and determine the allowance of claims and all claims against the Debtor pursuant to Section 502 of the Code; to determine the allowance of timely filed claims resulting from the rejection of executory contracts; to determine any issues in pending adversary proceedings, and in adversary proceedings commenced post-confirmation, including, but not limited to, avoidance or turnover actions; to determine any dispute as to the classification or allowance of claims; to fix and determine all pre-confirmation professional fees and other costs of administration; to require the performance of any act contemplated by the provisions of this Plan necessary for the consummation of the Plan; to resolve all the matters as may be set forth in the Order of Confirmation; to resolve, if necessary, issues relating to the establishment of the Plan Escrow Account, the retention of real estate brokers or appraisers, or the sale of real estate that is currently subject to the Bond Deed of Trust; to determine whether or not Class 10 is adequately protected; and to appoint a Liquidating Agent pursuant to paragraph 22.3 of this Plan.  In the event an appeal is perfected from the Order confirming the Plan, the Bankruptcy Court shall also retain jurisdiction to enter such Orders regarding the disbursement of funds under the Plan or the consummation thereof as may be necessary to protect the interest of the Debtor, its creditors and parties in interest.

ARTICLE 26
DISCLOSURE STATEMENT

The attention of holders of claims and interests is directed to the Disclosure Statement.

ARTICLE 27
CONFIRMATION FOR IMPAIRED CLASS NOT ACCEPTING THE PLAN

With respect to any impaired class of creditors not accepting the Plan by the requisite majority in number and two-thirds (2/3) in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under the Plan and that the Court should confirm the Plan without such acceptances by said impaired class or classes.